### Ronald and Beverly Page v. Smith-Gates Corporation

[465 A.2d 1102]

No. 82-053

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed September 1, 1983

*Robert S. Burke* of *Richard E. Davis Associates,* Barre, for Plaintiffs-Appellees.

*Robert R. McKearin* of *Dinse, Allen & Erdmann,* Burlington, for Defendant-Appellant.

**Underwood, J.** During the summer of 1975, plaintiff Ronald Page installed heating tape on the water pipes in his trailer in an effort to prevent the pipes from freezing during the winter months. In December of 1975, a short circuit occurred in the heat tape wires and a fire ensued causing $9,000 worth of damage to plaintiffs' trailer. Plaintiffs brought a complaint sounding in negligence and breach of warranty against defendant, the manufacturer of the tape. At the close of the evidence, and over defendant's objection, the trial court allowed plaintiffs orally to amend their complaint to include a claim of strict liability in tort. Restatement (Second) of Torts § 402A (1965) ; *Zaleskie* v. *Joyce,* 133 Vt. 150, 154–56, 333 A.2d 110, 113 (1975).

After trial, the court found the probable cause of the fire to be "a combination between misleading instructions and a degree of carelessness on Mr. Page's part," both of which led to his improper installation of defendant's heat tape. The court found that instead of securing the heat tape's thermostat inside the taping and against the water pipe, plaintiff suspended it outside the insulation. Since defendant's heat tape thermostat was designed to be activated by the temperature of the pipe being heated rather than by the temperature of the air surrounding the pipe, the thermostat kept the heating element working continuously once the cold weather arrived. Eventually the rubber insulation surrounding the heat tape wires melted, thus causing the short circuit which, in turn, caused the fire.

The court characterized as "ambiguous" one portion of the accompanying instructions which stated that the thermostat was to be placed "at the coldest point," without specifying whether this was the coldest point on the pipe or outside the tape in the surrounding air. However, the court went on to find that a "careful and detailed reading" of defendant's instructions in their entirety would resolve any ambiguities, and would eventually lead to proper placement of the thermostat. Nevertheless, the court noted that plaintiff was aware that

other brands of heat tape used air-sensing rather than pipe-sensing thermostats, that defendant knew of this difference, and that some of the pipes in plaintiffs' trailer already contained heat tape with an air-sensing thermostat left by the trailer's previous owners. For these reasons, the court concluded that defendant had a duty to explain and emphasize the difference between its installation method and those of its competitors, although it gave no indication whether such duty was grounded in negligence, warranty, or strict products liability. Since this differentiation was not stressed in defendant's instructions, the court found them susceptible to such misapplication as occurred here. Therefore, the court assessed sixty percent of the fire's causation to defendant, forty percent to plaintiffs and entered a judgment entitling plaintiffs to sixty percent of their total damages.

Defendant appeals, claiming that there is no duty on behalf of a manufacturer, whether plaintiffs' complaint sounds in negligence, warranty or strict products liability, to warn of differentiation between its product and those of its competitors. Defendant also contends that the court's finding of ambiguity in one portion of the instructions is without support in the evidence. Plaintiffs cross-appealed, claiming first that the court erred in absolving defendant of its duty to warn of the fire hazards which could result from improper installation of its thermostat, and second, that in a strict tort liability action the misconduct of the consumer cannot be used to reduce the manufacturer's damages. Unfortunately, the court's findings are so ambiguous, inadequate and incomplete that we cannot address these issues. In this regard, we note the following.

The court was presented with three theories of recovery—negligence, strict liability, and breach of warranty. However, it failed to make specific findings and conclusions as to each issue. With respect to the breach of warranty claim, the court ignored it entirely. As for the negligence and strict liability claims, the court never distinguished between the two. It is impossible to tell from the findings whether the judgment for plaintiffs was based on negligence or on strict liability. Similarly, we cannot tell which theory was not addressed, but should have been. Furthermore, as a consequence of this failure we cannot ascertain whether the plaintiffs' judgment was

reduced by forty percent because of the application of comparative negligence to his negligence claim, 12 V.S.A. § 1036, or because of the application of a comparative fault principle to plaintiffs' strict liability claim.*

"The purpose of findings is to make a clear statement to the parties, and to this Court if appeal is taken, of what was decided and how the decision was reached." *New England Power Co.* v. *Town of Barnet*, 134 Vt. 498, 503, 367 A.2d 1363, 1366 (1976). In the instant case, the findings are totally inadequate. It is not clear what decision, if any, was reached on each theory of recovery. Nor is it clear how the final decision that the plaintiffs were entitled to sixty percent of their total damages was reached. Thus, "[w]e are left to speculate as to the basis upon which the trial court made its findings and reached its decision." *Jensen* v. *Jensen*, 139 Vt. 551, 553, 433 A.2d 258, 260 (1981). This we will not do. We are, therefore, compelled in the interest of justice to reverse and remand the case for a new trial.

*Reversed and remanded.*

---

* If the latter, the court utilized the doctrine of comparative fault in a strict liability case, even though this Court has never taken a position on the issue. But see 26 ATLA L. Rep. 153 (1983) (reviews the case law on the issue of whether or not the principle of comparative fault is applicable to a strict products liability action). Although there is nothing to prevent a trial court's breaking new ground, it is essential that it offer some support or authority for doing so. Here the court merely stated that plaintiffs "could have been more careful" and assessed forty percent of the causation of the fire to them.